**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

LANE BENEDICT,

Plaintiff,

v.                                                                          9:25-cv-00691 (AMN/MJK)

JACOB WABY, PHILLIP HUBBARD, KARL
MEYER, SHERRI MURRAY, ABBY
PRENTICE, MAURICE BOUVIA, JOHN DOES
#1-5,

Defendants.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **LAW OFFICE OF ALI NAJMI**<br>32 Broadway – Suite 1310<br>New York, New York 10004 | **ALI NAJMI, ESQ.** |
| **WERTHEIMER FLEDER LLP**<br>14 Wall Street – Suite 4C<br>New York, New York, 10005<br>*Attorneys for Plaintiff* | **MARA FLEDER, ESQ.** |
| **NEW YORK STATE OFFICE OF**<br>**THE ATTORNEY GENERAL**<br>State Capitol<br>Albany, New York 12224<br>*Attorneys for Defendants* | **CHI-HSIN E. ENGELHART,**<br>**ESQ.**<br>**HEATHER M. LAMMARDO,**<br>**ESQ.** |

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

### I.     INTRODUCTION

On June 2, 2025, plaintiff Lane Benedict ("Plaintiff") commenced this action pursuant to

42 U.S.C. § 1983, alleging violations of his rights under the Eighth and Fourteenth Amendments.

*See* Dkt. No. 1 ("Complaint").   Plaintiff brings various claims against defendants Jacob Waby

1

("Waby"), Phillip Hubbard ("Hubbard"), Karl Meyer ("Meyer"), Maurice Bouvia ("Bouvia"), and five John Does (together, the "Officer Defendants"), arising from an alleged assault on September 19, 2023, at Cayuga Correctional Facility. *Id.* at ¶¶ 96-101, 117-30. Plaintiff also brings a claim for deliberate indifference to serious medical needs against defendants Sherri Murray ("Murray") and Abby Prentice ("Prentice") (collectively with the Officer Defendants, "Defendants"). *Id.* at ¶¶ 102-16.

Presently before the Court is Defendants' partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 10 (the "Motion"). Plaintiff opposed the Motion, Dkt. No. 13, and Defendants replied, Dkt. No. 14. For the following reasons, the Court grants the Motion in part and denies it in part.

## II.    BACKGROUND

### A. The Parties

Plaintiff is an individual residing in the state of New York. Dkt. No. 1 at ¶ 5. At all relevant times, he was incarcerated in the New York State Department of Corrections and Community Supervision ("DOCCS"). *Id.*

Defendants Waby and Hubbard are individuals employed by DOCCS as correctional officers. *Id.* at ¶¶ 6-7. Defendant Meyer is an individual employed by DOCCS serving as a sergeant, and Defendant Bouvia is an individual employed by DOCCS serving as a lieutenant.. *Id.* at ¶¶ 8, 10. Defendants Murray and Prentice are individuals employed by DOCCS as registered nurses. *Id.* at ¶¶ 9-10. Defendants Waby, Hubbard, Meyer, Bouvia, Murray, and Prentice were all employed at Cayuga Correctional Facility ("Cayuga") in September 2023. *Id.* at ¶¶ 6-11.

Plaintiff alleges that John Does #1-5 are also individual correctional officers whose identities are presently unknown. *Id.* at ¶ 12.

### B. Plaintiff's Allegations

Plaintiff alleges that on September 19, 2023, he was in his vocational training class at Cayuga when Defendants Waby and Hubbard entered and told Plaintiff to step into the hallway. Dkt. No. 1 at ¶ 23. Plaintiff alleges that he had originally received permission from the class instructor to "take the day off from the program" because he had received concerning news about his family, but returned to the class after the correctional officer assigned to his dorm told Plaintiff that "Officer Waby and Officer Hubbard called her and told her to send Mr. Benedict back to the vocational building." *Id.* at ¶¶ 13-22.

Plaintiff alleges that he complied and entered the hallway, where Defendants Waby and Hubbard told him to put his hands against the wall. *Id.* at ¶¶ 27-28. After Plaintiff did so, Defendants Waby and Hubbard told Plaintiff to walk into the draft room, which lacks cameras. *Id.* at ¶¶ 28-30. Plaintiff alleges that three other officers were present in the draft room when they arrived. *Id.* at ¶ 31. Plaintiff alleges that Defendants Waby and Hubbard again told him to put his hands on the wall. *Id.* at ¶ 32. After Plaintiff complied, Plaintiff alleges that Defendant Waby told him that "he had just gotten back to work from two weeks of leave, and all he can hear that day is Mr. Benedict's name." *Id.* at ¶ 33. Plaintiff then alleges that Defendant Waby punched Plaintiff in the face. *Id.* at ¶ 34.

Plaintiff further alleges that both Defendants Waby and Hubbard began hitting him and spraying him with their "OC spray." *Id.* at ¶ 36. Plaintiff fell to the ground, at which point one of the Defendants put his knee on Plaintiff's back and handcuffed him. *Id.* at ¶ 37. Defendants Waby and Hubbard then "began beating Mr. Benedict harder, hitting him, and kicking him on his side," and "striking him on his ribs, back, head, and legs." *Id.* at ¶¶ 38, 40. Plaintiff alleges that at one point, he "felt one of the officers put his hands in his pants, and penetrate his anus with his fingers"

3

and that "[t]he officer also squeezed his testicles and pulled at his penis." *Id.* at ¶ 43-44  Plaintiff also alleges that Defendants Waby and Hubbard sprayed OC spray all over his body, face, and inside his pants, emptying several canisters. *Id.* at ¶ 45.  Plaintiff alleges that the officers who had been present in the room when they arrived "did not become involved in beating Mr. Benedict, nor did they take any action to intervene to interrupt the abuse[.]" *Id.* at ¶ 41.

Plaintiff alleges that Defendants Waby and Hubbard eventually "took him away to medical," where there were joined by Defendant Meyer as well as Defendant Murray, who examined Plaintiff for injuries. *Id.* at ¶¶ 47-48.  Plaintiff alleges that Defendant Murray observed "swelling on his forehead measuring 2 1/2 inches by 1 inch, and swelling on the bridge of his nose measuring 1/2 inch by 1/4 inch." *Id.* at ¶ 50.  Plaintiff also alleges that when Defendant Murray asked how he was injured, Plaintiff began to talk about the assault, but Defendants Waby and Hubbard cut him off, "told him to shut the fuck up," and made threatening remarks, including "we're going to kill you, you stupid Native American.  We took all your land already and we're going to kill you like we killed your ancestors." *Id.* at ¶¶ 51-52.  Plaintiff further alleges that Defendants Waby and Hubbard then "yanked his hair out, and punched him several times in the ribs, face, throat, and genital area" in the presence of Defendants Murray and Meyer, and continued to beat him "for another few minutes" after Defendants Murray and Meyer left the room. *Id.* at ¶¶ 53, 59.  Plaintiff alleges that even though he complained of "pain on his head, back, legs, and torso, particularly in his right rib area," Defendant Murray did not report those injuries at that time. *Id.* at ¶ 57.

Plaintiff alleges that Defendants Waby and Hubbard then brought him to the Special Housing Unit ("SHU") and filled out Use of Force paperwork "where they falsely reported the [Plaintiff] had physically assaulted Officer Waby" and that neither of them struck Plaintiff,

"instead claiming to only have used OC spray and body holds until mechanical restraints could be secured." *Id.* at ¶¶ 61-62. While in the SHU, Plaintiff alleges that he reported significant pain and that he was urinating and coughing up blood but was not provided any medical attention for four days. *Id.* at ¶¶ 68-69. Plaintiff also alleges that Defendant Meyer sent a memorandum to Defendant Bouvia based on the allegedly false report to justify placing Plaintiff in the SHU. *See id.* at ¶¶ 63-66.

Plaintiff alleges that on September 23, 2023, Defendant Prentice visited Plaintiff for a "sick call," during which Plaintiff reported broken ribs, blurry vision in his right eye, bloody urine, and also requested a new pair of glasses. *Id.* at ¶¶ 70-72. Plaintiff alleges that Nurse Prentice reported "a lump on the right side of [Plaintiff's] ribs and that he was in pain when she touched that area," "reddened sclera," and noted that Plaintiff had "reported urinating blood." *Id.* at ¶¶ 71-72. Plaintiff alleges the Defendant Prentice gave Plaintiff "some Tylenol and an ice pack for the pain" and told Plaintiff to provide a urine sample, "however, he was never given a cup to provide it." *Id.* at ¶ 73.

On September 25, Plaintiff alleges that he began the hearing process to challenge the allegedly false Use of Force report, but it was never completed. *Id.* at ¶ 75. On October 3, Plaintiff was transferred to Green Haven Correctional Facility, where he was placed in the SHU. *Id.* at ¶ 77. On October 10, Plaintiff was then transferred to Upstate Correctional Facility ("Upstate") and again placed in the SHU. *Id.* at ¶ 79. At Upstate, Plaintiff alleges that a sergeant "looked at his paperwork and saw he had never been found guilty of the allegations and had no disciplinary sanctions imposed against him." *Id.* at ¶ 80. After the sergeant discharged Plaintiff from the SHU, Plaintiff alleges that the sergeant recommended that he contact a lawyer because he had been "confined in solitary for more than 20 days without being found guilty of disciplinary charges." *Id.* at ¶ 81.

5

On October 16, Plaintiff was transferred to Bare Hill Correctional Facility ("Bare Hill"). *Id.* at ¶ 82. During his intake health screening, Plaintiff alleges that he requested medical attention, complained of right rib pain, and that the nurse noted "deformities," "evidence of trauma," "a lump," and swelling in his right rib area. *Id.* at ¶¶ 83-84, 86. On October 17, Plaintiff received an x-ray of his chest, which found "displaced fractures on his lateral 8th and 9th ribs." *Id.* at 88.

Plaintiff also alleges that he suffered injuries to his head that resulted in scars as well as ongoing head pain, migraines, and dizzy spells. *Id.* at ¶¶ 88-92. Plaintiff further alleges that he has suffered extreme mental distress, including "feeling [a] sense of terror whenever near uniformed officers, paranoia, anxiety, panic attacks, and depression, none of which he suffered from before the assault." *Id.* at ¶ 94.

### C. Plaintiff's Claims and Defendants' Motion

Plaintiff brings the following claims: (1) excessive force pursuant to the Eighth Amendment against Defendants Waby and Hubbard, *id.* at ¶¶ 96-101; (2) failure to intervene pursuant to the Eighth Amendment against Defendant Meyer and John Does #1-5, *id.* at ¶¶ 117-22; (3) deliberate indifference to serious medical needs pursuant to the Eighth Amendment against Defendants Murray and Prentice, *id.* at ¶¶ 102-16; and (4) violation of his right to procedural due process under the Fourteenth Amendment against the Officer Defendants, *id.* at ¶¶ 123-30.

Defendants' Motion seeks dismissal of Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Prentice and Plaintiff's Fourteenth Amendment procedural due process claim against the Officer Defendants. *See* Dkt. No. 10.

### III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).

In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers*, 282 F.3d at 152-53).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555, and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## IV.    DISCUSSION

### A. Deliberate Medical Indifference

Defendants argue that Plaintiff fails to allege a claim for deliberate indifference to serious medical needs against Defendant Prentice. Dkt. No. 10-1 at 6-8.[1] Specifically, Defendants assert that Plaintiff fails to adequately allege that Defendant Prentice acted with the requisite "culpable state of mind" when she visited Plaintiff for a "sick call" on September 23, 2023. *Id.* at 7.

To state a claim for deliberate medical indifference under the Eighth Amendment, a plaintiff must demonstrate "deliberate indifference to a prisoner's serious medical needs." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citation and brackets omitted). This showing includes an objective and subjective component. *See id.*

Objectively, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Id.* (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). While there is no precise measure for the seriousness of a prisoner's medical condition, the Second Circuit has provided a non-exhaustive list of factors for a court's consideration: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (3) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). Additionally, "the Eighth Amendment forbids not only deprivations of medical care that produce physical torture and

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system

lingering death, but also less serious denials which cause or perpetuate pain." *Id.* at 163 (quoting

*Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977) (internal quotation marks omitted)).

Subjectively, the defendant must act with a "sufficiently culpable state of mind"—that is,

the defendant "must know of and disregard an excessive risk to inmate health or safety; the

[defendant] must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and [s]he must also draw the inference." *Id.* (quoting *Farmer v.

Brennan*, 511 U.S. 825, 837 (1994) (internal quotations omitted).

### 1. Objectively Serious Medical Need

Plaintiff alleges, and Defendant Prentice does not dispute, that he experienced a serious

medical condition. *See* Dkt. No. 10-1 at 6-7; Dkt. No. 14 at 2-3. Plaintiff alleges that when

Defendant Prentice visited him on September 23, 2023, four days after the alleged assault by

Defendants Waby and Hubbard, he was experiencing broken ribs, right rib pain, blurry vision, and

bloody urine, Dkt. No. 1 at ¶¶ 70-73, and that he continued to experience pain resulting from the

alleged assault up through the time he arrived at Bare Hill on October 16, 2023, *id.* at ¶¶ 82-87.

Plaintiff alleges that the next day, an x-ray confirmed that he had broken ribs, and that his injuries

eventually left him with scars on his face as well as ongoing head pain, migraines, dizzy spells,

and extreme mental distress. *Id.* at ¶¶ 88-94. The Court finds these injuries sufficient to allege an

objectively serious medical need. *See, e.g.*, *Munoz v. Eliezer*, No. 16-CV-6049, 2018 WL

1626170, at *6 (S.D.N.Y. Mar. 30, 2018) (finding that alleged injuries of "three-to-four broken

ribs and a dislocated shoulder are certainly serious for purposes of the Eighth Amendment")*;

Griffin v. Donelli*, No. 05-CV-1072, 2010 WL 681394, at *8 (N.D.N.Y. Feb. 24, 2010) (finding

that plaintiff sufficiently showed serious medical need by alleging "a broken rib and head

laceration"); *Brock*, 315 F.3d at 163 (finding serious medical need where plaintiff showed evidence that he was experiencing chronic pain falling "somewhere between 'annoying' and 'extreme'").

### 2. Subjective Deliberate Indifference

Nevertheless, turning to the subjective component, the Court finds that the Complaint fails to adequately allege that Defendant Prentice acted with a sufficiently culpable state of mind. The Complaint alleges that after observing a lump on the right side of Plaintiff's ribs, reddened sclera in Plaintiff's right eye, and noting Plaintiff's report of pain and bloody urine, Defendant Prentice gave Plaintiff "some Tylenol and an ice pack for the pain" without taking further action. Dkt. No. 1 at ¶ 73. The Complaint also alleges that Defendant Prentice told Plaintiff to provide a urine sample but did not follow through on giving Plaintiff a cup to do so. *Id.*

"While the medical care received by the prisoner must be adequate, a prisoner is not entitled to receive treatment by every medical alternative." *Johnson v. Wright*, 234 F. Supp. 2d 352, 361 (S.D.N.Y. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 106-07 (1976)). "A difference of opinion between a prisoner and his doctors regarding medical treatment does not rise to the level of a constitutional violation." *Id.* (citations omitted). Generally, a court will not second guess doctors where a dispute concerns the choice of a certain course of treatment rather than the absence of treatment. *Id.* (citing *Sires v. Bermani*, 834 F.2d 9, 13 (1st Cir. 1987)). But, "[i]n certain instances, a doctor may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan.'" *Chance*, 143 F.3d at 703 (quoting *Williams v. Vincent*, 508, F.2d 541, 544 (2d Cir. 1974)). "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Id.*

Here, Defendants assert that the Complaint fails to allege that Defendant Prentice consistently or deliberately failed to address a serious medical need because Plaintiff was not

10

diagnosed with broken ribs until a few weeks later and because the Complaint does not allege that Defendant Prentice was responsible for not completing the urinalysis. Dkt. No. 10-1 at 7. At most, Defendants argue, Defendant Prentice was negligent, which does not rise to the level of a constitutional violation. *Id.* (quoting *Estelle*, 429 U.S. at 106). Defendants also assert that the Complaint fails to provide facts from which an inference regarding Defendant Prentice's state of mind could be made. Dkt. No. 14 at 3 (citing *Ayuso v. Griffin*, No. 18-CV-3419, 2020 WL 230090, at *11 (S.D.N.Y. Jan. 14, 2020)).

The Court agrees. Here, the Complaint describes Defendant Prentice's actions in response to Plaintiff's symptoms, but it fails to allege facts allowing the Court to infer that those actions resulted from anything more than negligence or a difference of opinion regarding medical treatment. First, while Defendant Prentice's issuance of Tylenol and an ice pack may seem inadequate given Plaintiff's later diagnosis of broken ribs, for the purpose of deliberate indifference, that later diagnosis is immaterial to whether Defendant Prentice acted with a sufficiently culpable state of mind at the time that she treated Plaintiff. And the Complaint fails to allege facts suggesting that, at that time, Defendant Prentice "consciously" chose a less efficacious treatment plan. *See e.g.*, *Darby v. Greenman*, 14 F.4th 124, 129 (2d Cir. 2021) (finding that plaintiff failed to state Eighth Amendment claim against one defendant who allegedly provided inadequate dental treatment); *id.* at 129 n. 3 (clarifying that a court's post hoc medical judgments cannot compensate for a plaintiff's failure to plead facts supporting a "conscious disregard of a substantial risk of serious harm" and stating that this circuit's precedents "do not call for inferring culpable recklessness from allegations of inadequate treatment alone"). In addition, even if Defendant Prentice was responsible for following through on the urinalysis,

11

without further allegations regarding her state of mind as to that failure, the subjective prong is not satisfied.

Plaintiff argues that the Complaint's factual allegations are sufficient to allow an inference that Defendant Prentice "was motivated by a desire to conceal the extent of the injuries caused by officers within that facility." Dkt. No. 13 at 10. But at no point does Plaintiff allege facts suggesting that Defendant Prentice knew of Plaintiff's alleged assault by Defendants Waby and Hubbard or that Plaintiff's injuries may have resulted from that alleged assault. *See* Dkt. No. 1 at ¶¶ 70-74. Thus, the Court cannot infer from the facts alleged that Defendant Prentice acted with the requisite state of mind. As such, the Court dismisses Plaintiff's claim for deliberate indifference to serious medical needs against Defendant Prentice.

## B. Procedural Due Process

To state a claim for deprivation of procedural due process a plaintiff must allege that he (1) possessed a protected liberty or property interest, and (2) was deprived of that interest without constitutionally adequate process. *Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019). Prison discipline such as SHU confinement implicates an incarcerated individual's liberty interest only if "the conditions and duration of the prisoner's confinement 'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Sealey v. Giltner*, 197 F.3d 578, 583 (2d Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472 ,484 (1995)). A plaintiff must also establish "that the state has granted its inmates, by regulation or statute, a protected liberty interest in remaining free from that confinement or restraint." *Martinaj v. Uhler*, No. 9:18-CV-00257, 2019 WL 652251, at *6 (N.D.N.Y. Feb. 15, 2019) (quoting *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)); *see also id*. at *10 (concluding that there is a state-created liberty interest in remaining free from SHU confinement).

12

Defendants argue that Plaintiff has not alleged the deprivation of a liberty interest protected by the Fourteenth Amendment.  *See* Dkt. No. 10-1 at 8-9; Dkt. No. 14 at 3-4.  Specifically, Defendants assert that Plaintiff alleges that he was confined in the SHU for less than thirty days, which generally does not constitute an "atypical hardship" under the *Sandin* test.  Dkt. No. 10-1 at 8-9; *see, e.g., Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) ("[R]estrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual.") (citing *Colon v. Howard*, 217 F.3d 227, 231-32 & n. 5 (2d Cir. 2000)).  Defendants further assert that Plaintiff fails to allege that his confinement in the SHU was characterized by anything other than ordinary SHU conditions.  Dkt. No. 14 at 3-4 (citing *Bell v. Saunders*, No. 9:20-CV-00256, 2022 WL 2064872, at *6 (N.D.N.Y. June 8, 2022)).[2]

The Court disagrees.  The Second Circuit has recognized that medical deprivation claims "may properly be considered as part of the liberty interest analysis under *Sandin*."  *LaBounty v. Kinkhabwala*, 2 F. App'x 197, 201 (2d Cir. 2001) (summary order).  Here, as detailed above, Plaintiff alleges that he was confined to the SHU while suffering from untreated injuries resulting from the alleged excessive force incident, including broken ribs.  *See* Dkt. No. 1 at ¶¶ 53-74  It was not until after he was released from the SHU that his broken ribs were even diagnosed.  *Id.* at ¶¶ 81-88.  In addition, he alleges that he was confined to the SHU without his misbehavior report having been adjudicated, an error that was only discovered after he had served time in the SHU in

---

[2] The Second Circuit has not articulated precise parameters for what constitutes ordinary SHU conditions for the purpose of a *Sandin* analysis, *see Bradshaw v. Annucci*, No. 9:23-CV-0602, 2023 WL 4744735, at *21 (N.D.N.Y. July 24, 2023), but courts have generally noted the following typical baseline: "confinement for 23 hours per day, one hour of recreation, no windows, limited privacy, access to paper and a pencil, restricted phone use, one visitor per week, and no items of personal clothing[.]" *Bell*, 2022 WL 2064872, at *7 (N.D.N.Y. June 8, 2022) (citing *Colon v. Howard*, 215 F.3d 227 (2d Cir. 2000)) (further citations omitted).

three separate correctional facilities. *Id.* at ¶¶ 75-81. Because Plaintiff alleges that he was only discharged from the SHU after an officer at his second transfer facility reviewed his paperwork and noted that he had never been found guilty of the allegations and no disciplinary sanction had been imposed upon him, the Court infers that Plaintiff had no sense of when he might be released from solitary confinement. *See id.*

The Court finds that these allegations, assumed true at the pleading stage, plausibly indicate conditions that constitute an atypical hardship implicating a protected liberty interest. *See, e.g.*, *Martinaj*, 2019 WL 652251, at *10 (denying motion to dismiss where one plaintiff alleged that a defendant threw him down flight of stairs prior to month-long confinement in SHU, during which his requests for medical treatment for injuries caused by that assault were consistently denied, and another plaintiff was denied contact in the SHU such that he had no "idea as to when, if ever, he might be released from SHU"); *Zenon*, 2018 WL 6702851, at *4-5 (denying motion to dismiss where plaintiff confined in the SHU for thirty-one days alleged, *inter alia*, that defendants severely abused plaintiff on the way to the SHU and no one told him whether or when he would be released from solitary).[3]

---

[3] Plaintiff argues that the Court should apply the statutory limits of New York's Humane Alternatives to Long-Term Solitary Confinement Act (the "HALT Act") in determining whether Plaintiff's allegation regarding the length of his confinement in the SHU implicates a protected liberty interest. Dkt. No. 13 at 12-13. The HALT Act "took effect on March 31, 2022, and amends the standards in N.Y. Corr. Law § 137 governing treatment, control, and discipline at correction facilities." *Rivera v. Molina*, No. 23-CV-4128, 2023 WL 4847865, at *4 (S.D.N.Y. July 27, 2023). In relevant part, the HALT Act prohibits placement "in segregated confinement for longer than necessary and no more than fifteen consecutive days," and "no more than twenty days total within any sixty day period" absent specific criteria. N.Y. Corr. Law § 137(6)(i)(i). Recently, the Second Circuit has suggested that the durational limits of the HALT Act may "benchmark the ordinary incidents of prison life in New York" when considering whether the length of time that an incarcerated individual is confined in the SHU implicates a liberty interest. *Vidal v. Venettozzi,* 171 F.4th 611, 620-21 (2d Cir. 2026) (stating that while the HALT Act postdated this plaintiff's confinement, "it is emblematic of New York's trend toward shorter periods of disciplinary segregation"). Ultimately, however, the Circuit held that disciplinary confinement of 180 days

As such, Plaintiff was entitled to "an opportunity to present his views" within a reasonable time following his placement in the SHU. *Martinaj*, 2019 WL 652251, at *11 (quoting *Zenon*, 2018 WL 6702851, at *5, and citing *Wright v. Smith*, 21 F.3d 496, 499–500 (2d Cir. 1994)). Here, Plaintiff alleges that no such process was given to him and that the report filed to justify his SHU placement was fabricated, Dkt. No. 1 at ¶¶ 61-66, 126-27. The Court therefore declines to dismiss Plaintiff's procedural due process claim against Defendants Waby, Hubbard, and Meyer at this stage.[4]

## V.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Prentice be **DISMISSED without prejudice**; and the Court further

**ORDERS** that Plaintiff's Fourteenth Amendment due process claim against Defendants Bouvia and John Does #1-5 be **DISMISSED without prejudice**; and the Court further

---

under ordinary conditions plainly implicates a liberty interest, but declined to create a bright line rule concerning the duration of confinement. *See id.* at 622. Here, because the Court finds that Plaintiff's allegations suffice to implicate a liberty interest largely based on the conditions of his SHU confinement, rather than the duration of that confinement, the Court expresses no opinion as to whether or how the HALT Act has changed what constitutes the ordinary incidents of prison life as applied to the length of SHU confinement.

[4] The Court, however, *sua sponte* dismisses Plaintiff's claim under the Fourteenth Amendment as to Defendants Bouvia and John Does #1-5 without prejudice. The Complaint fails to allege facts suggesting that Defendant Bouvia or any of the Defendant John Does personally participated in the alleged deprivation of Plaintiff's due process rights. *See* Dkt. No. 1 at ¶¶ 61-66, 123-30; *Hickman v. City of New York*, No. 24-CV-1754, 2024 WL 3445194, at *1 (S.D.N.Y. July 17, 2024) (dismissing Section 1983 claims against certain defendant officers *sua sponte* where plaintiff did not plausibly allege that those officers were personally involved in violating his constitutional rights).

**ORDERS** that Defendants' Motion to dismiss Plaintiff's Fourteenth Amendment due process claim against the Defendants Waby, Hubbard, and Meyer be **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 15, 2026
      Albany, New York

Anne M. Nardacci
U.S. District Judge

16